**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Schayes and Wendy Schayes, husband and wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>T.D. Service Company of Arizona, current trustee, and Pennymac Loan Services, LLC, current beneficiary, et al.,<br><br>    Defendants. | No. CV-10-02658-PHX-NVW<br><br>**ORDER** |

  Before the Court is "Plaintiffs' Motion to Remand" (Doc. 7) and "Defendant Pennymac Loan Services, LLC's Motion to Dismiss Complaint" (Doc. 6). Defendant T.D. Service Company of Arizona has joined the motion to dismiss (Doc. 9). The Court will deny Plaintiffs' motion, grant Defendants' motion, and dissolve the temporary restraining order issued by the Maricopa County Superior Court. The Court will also grant Plaintiffs leave to amend their complaint.

**I.  BACKGROUND**

  The Court draws the following facts mostly from Plaintiffs' haphazard complaint, as well as the documents that Plaintiffs submitted in preliminary injunction proceedings before the Maricopa County Superior Court. The Court will assume the truth of Plaintiffs' plausibly alleged facts, as it must for purposes of the pending motion to dismiss. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Sometime before March 22, 2007, Plaintiffs Daniel and Wendy Schayes decided to buy a home in Arizona with financing of $1,295,000 provided by CitiMortgage, Inc.[1] The Schayes filled out a loan application in which they accurately provided their then-current income, as well as supporting documentation in the form of tax returns for the previous two years. However, unknown to the Schayes, CitiMortgage's local agent disregarded that income, replaced it with a lower figure, and then forwarded the application to the CitiMortgage underwriting department. This fictitious lower income figure prompted the underwriting department to treat the Schayes as riskier borrowers and therefore require them to pay a higher interest rate. Further, the underwriting department approved the Schayes for an adjustable-rate loan with a period of interest-only payments, rather than a fixed-rate loan. Before the loan closed, CitiMortgage told the Schayes that the loan product for which they had been approved was the only loan product for which they qualified, when in reality, their actual income would have qualified them for a better loan.

The Schayes and CitiMortgage closed this loan transaction on March 22, 2007. As is typical in real estate transactions, the Schayes executed a promissory note in favor of CitiMortgage, and also a deed of trust securing that note. The loan documentation included a second home rider, suggesting that this Arizona home was not the Schayes' primary residence. Various loan documents give a Florida residential address as the Schayes' mailing address.

The Schayes allege that their original loan documents were scanned and then destroyed to facilitate transferring and securitizing the Schayes' loan through the Mortgage Electronic Registration System, commonly known as MERS. MERS was named as a nominal beneficiary under the deed of trust, on behalf of CitiMortgage.

---

[1] At one point, Complaint states that the Schayes borrowed $150,000, but it later says $1,295,000. (Compl. ¶¶ 6, 14.) The promissory note and deed of trust submitted by the Schayes confirms that they borrowed $1,295,000.

Apparently through MERS, CitiMortgage eventually assigned the note and deed of trust to Defendant Pennymac Loan Servicing.

At some unspecified point, the Schayes fell behind on this loan, allegedly because they could not afford the adjustable-rate payments. On August 13, 2010, Defendant T.D. Service Company of Arizona, designated by MERS as a successor trustee under the deed of trust, noticed a trustee's sale to take place on November 17, 2010. On November 15, 2010, the Schayes learned for the first time (from a lawyer they hired to review their situation) that CitiMortgage had approved the Schayes' loan based on falsely deflated income.

On November 16, 2010, the Schayes filed suit in Maricopa County Superior Court against T.D. Service Company and Pennymac, asserting four causes of action. First, they accuse Pennymac and T.D. Service Company of "intentional misrepresentation," or common law fraud, based on CitiMortgage's scheme to ensure a higher interest rate on the Schayes' loan. The Schayes claim that Pennymac is liable for CitiMortgage's actions because Pennymac "had knowledge [of those actions] and is not a bona fide purchaser as the defects are on the face of the loan documents and documents are missing that indicate that concealment has taken place." (Compl. ¶ 37.) The Schayes do not explain how T.D. Service Company is liable for CitiMortgage's actions. Second, the Schayes accuse Pennymac of statutory consumer fraud (citing A.R.S. § 44-1521 *et seq*.), also based on the theory that CitiMortgage defrauded the Schayes, and that Pennymac can be liable because it knew of the fraud when it took the note. Third, the Schayes ask for an accounting from Pennymac and from non-party MERS. Finally, the Schayes assert a quiet title action against Pennymac, arguing that unspecified offsets "are greater in amount than the sum that would otherwise be due under the promissory note, and/or Plaintiffs are entitled to rescission of the promissory note and deed of trust such that Defendants claim to the property is released." (Compl. ¶ 56.) The Schayes claim significant economic damages, including at least $1.5 million in compensatory damages and at least $500,000 in emotional distress damages.

The same day the Schayes filed their complaint, they moved for and were granted a temporary restraining order stopping the trustee's sale. The Superior Court set an evidentiary hearing regarding the propriety of a preliminary injunction for January 6, 2011. On December 13, 2010, Pennymac removed to this Court, claiming diversity jurisdiction. Pennymac asserts that the Schayes are Arizona residents (based on their ownership of the home at issue in this lawsuit), and that it and T.D. Service Company are California residents. Pennymac's notice of removal states, "undersigned counsel avers that no defendant has objected to removal." (Doc. 1 at 4.) On December 30, 2010, T.D. Service Company filed a notice of joinder in Pennymac's removal. Pennymac and T.D. Service Company (collectively, "Defendants") have now moved to dismiss, and the Schayes have simultaneously moved to remand.

**II.     THE SCHAYES' MOTION TO REMAND**

  **A.     Legal Standard**

If a case filed in state court could have been filed in federal court, the defendant(s) in that case can sometimes remove it to federal court. 28 U.S.C. § 1441(b). "Could have been filed in federal court" is the most important prerequisite for removal, meaning that a federal court has original jurisdiction over the dispute. Original federal jurisdiction most commonly arises when the complaint raises an issue of federal law. 28 U.S.C. § 1331. However, if a lawsuit raises no issues of federal law (such as this one), district courts still have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000 — so-called "diversity jurisdiction." 28 U.S.C. § 1332(a)(1).

State court cases that could have been filed in federal court as a diversity jurisdiction cases can be removed to federal court under the following conditions. First, no defendant can be a resident of the forum state. 28 U.S.C. § 1441(b). Second, a defendant must file a notice of removal within thirty days of receiving the plaintiff's complaint, and in any event, no later than one year after the action begins. *Id.* § 1446(b). Third, when a case involves multiple defendants, all defendants must consent to removal.

*Proctor v. Vishay Intertech. Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009). However, "the filing of a notice of removal [by one defendant] can be effective [as to all defendants] without individual consent documents on behalf of each defendant. One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient." *Id*.

The removing party bears the burden of establishing federal subject matter jurisdiction. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). There is a strong presumption against removal jurisdiction. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). If at any time before final judgment it appears that the district court lacks jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c).

**B.     Analysis of Diversity Jurisdiction in this Case**

**1.     Unanimity & Fraudulent Joinder**

The Schayes argue that removal was improper because T.D. Service Company did not file a consent to removal until December 30, 2010 — more than 30 days after it received the complaint, thus violating the statutory requirement that all parties remove within 30 days. *See* 28 U.S.C. § 1446(b). Defendants counter that Pennymac's notice of removal sufficed for both Pennymac and T.D. Service Company. Pennymac is incorrect. The Ninth Circuit permits one defendant to remove on behalf of all defendants if that notice of removal states that all other defendants have *consented* to removal. *Proctor*, 584 F.3d at 1225. Pennymac's notice of removal, by contrast, says that "no defendant has objected to removal." This does not suffice. And even if failure to object could be considered consent in some circumstances, it would not apply in this case because Pennymac's notice of removal does not say whether it told T.D. Service Company that it intended to remove.

Because removal statutes are construed strictly against the party attempting to remove, T.D. Service Company's failure to consent to removal within the 30-day statutory window would normally require this Court to remand this case to state court.

However, the requirement that all defendants consent to removal "does not apply to nominal, unknown or fraudulently joined parties." *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) (internal quotation marks omitted). The question in this case, then, is whether T.D. Service Company was fraudulently joined.

"Fraudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). District court can find fraudulent joinder "[o]n the basis of the complaint alone." *Id.*

In this case, the Complaint alone demonstrates that the Schayes have obviously failed to state a cause of action against T.D. Service Company. The only cause of action asserted against T.D. Service Company is for common law fraud. However, the Schayes attribute all of the allegedly fraudulent action to CitiMortgage. They make no accusation against T.D. Service Company. They do not even attempt to hang CitiMortgage's alleged wrongdoing around T.D. Service Company's neck (in contrast to their accusation that Pennymac took the note from CitiMortgage with full knowledge of CitiMortgage's fraud). Therefore, the Schayes have stated no cause of action against T.D. Service Company, and T.D. Service Company was a fraudulently joined party.

The Schayes may have included T.D. Service Company to ensure that an injunction against the trustee's sale would restrict the right party. However, that is not enough to keep T.D. Service Company in this case. Under the Arizona Deed of Trust Act, the trustee is a necessary party only in "legal actions pertaining to a breach of the trustee's obligation." A.R.S. § 33-807(E). Otherwise,

> [a]ny order of the court entered against the beneficiary is binding upon the trustee with respect to any actions that the trustee is authorized to take by the trust deed or by this chapter. If the trustee is joined as a party in any other action, the trustee is entitled to be immediately dismissed and to recover costs and reasonable attorney fees from the person joining the trustee.

*Id.* Nothing in the Schayes' complaint "pertain[s] to a breach of the trustee's obligation." Therefore, the Court will dismiss T.D. Service Company. T.D. Service Company may move for costs and attorneys fees at the close of this case.

### 2.    Citizenship

Having dismissed T.D. Service Company, the Court must next decide whether the remaining parties — the Schayes and Pennymac — are citizens of different states. The Schayes' citizenship is not clear. The Complaint alleges that they own a home in Arizona, but it does not allege that they are citizens of Arizona. Given that their Arizona home is a second home, and that the Schayes used a Florida address as their mailing address, it may be that they are citizens of Florida.

Whether the Schayes are citizens of Arizona or Florida, they are still diverse from Pennymac. As an LLC, Pennymac "is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). According to an affidavit submitted by Pennymac, its sole member (also an LLC), its member's members (comprising individuals and LLCs), and its member's members' members (comprising individuals, a trust, and a corporation) are citizens of either California, Delaware, Massachusetts, or New York. None of these individuals or entities is a citizen of Arizona or California, and therefore Pennymac is not a citizen of Arizona or California. Thus, the Schayes and Pennymac are citizens of different states.

### 3.    Amount in Controversy

Even though the Schayes and Pennymac meet the diversity-of-citizenship requirement, the amount in controversy must still be more than $75,000. In this respect, the Schayes strangely claim that "[t]here is no allegation in the complaint or prayer for relief in excess of the jurisdictional minimum." (Doc. 7 at 14.) In reality, the Complaint (including the prayer for relief) repeatedly asks for amounts ranging from $500,000 to $1.5 million. The Court therefore finds that the amount in controversy exceeds $75,000. The Schayes' attorney cannot in good faith assert otherwise. Accordingly, Pennymac has

established federal jurisdiction under 28 U.S.C. § 1332(a)(1), and has filed a notice of removal within the required time limit.  Removal was therefore proper.

**C.     Abstention**

Although Pennymac has properly removed, the Court could still remand this case if it determines that it should abstain from deciding this dispute.  Abstention is a rare commodity — federal courts have a "virtually unflagging obligation" to resolve disputes over which they properly have jurisdiction.  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  The Schayes nonetheless urge this Court to abstain based on the principle articulated by the Supreme Court in *Burford v. Sun Oil Co.*:

> Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise, refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest; for it is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy.

319 U.S. 315, 317–18 (1943) (footnotes and internal quotation marks omitted).

The Schayes believe that their lawsuit deserves *Burford* abstention because they raise important issues of Arizona domestic policy that Arizona state courts rarely have a chance to address:

> [H]ome foreclosures in the State of Arizona are governed by state law . . . . Arizona court dockets are filled with lawsuits by homeowners against their lenders, servicers, trustees, and investors.  Lenders and other named defendants routinely remove the cases to federal court, in spite of the plaintiff's choice of forum and in spite of the issues of state, not federal, concern.  Continued federal court determination of these cases is disruptive of this State's need to establish a coherent policy in resolving the homeowner lawsuits filed here. Many of the issues presented in Plaintiffs' Complaint are issues of first impression . . . [such as their] argument that any entity attempting to foreclose should be required to provide conclusive proof that this entity, rather than any other, is entitled to payment under the note, and is entitled to foreclose on the deed of trust. *See* Complaint §§ 104, 105, 106, and Count One (§§112-134) and Count Two (§§135-153).

(Doc. 7 at 6.)  The problem with this argument — often called the "show me the note" theory[2] — is that "Complaint §§ 104, 105, 106, and Count One (§§112-134) and Count Two (§§135-153)" do not exist.  Rather, the Schayes' Complaint ends at paragraph 57, and Counts One and Two have nothing to do with this supposed question of first impression.  Pennymac's response pointed out as much, but the Schayes' reply did not correct the argument.  Instead, the Schayes' attorney appears to have copied the argument verbatim from his original motion, including the erroneous citations.[3]  (Doc. 14 at 6.)

The closest the Schayes come to stating a "show me the note" argument is paragraph 54 of their Complaint, where they allege (as part of their quiet title cause of action) that

> the deed of trust specifically grants to the lender, and not to MERS, repayment, renewal, extensions and modifications of the promissory note, and indicates that MERS only holds "legal title" and not equitable title. Despite MERS owning no right to payment and having no ability to experience an event of default under the promissory note, MERS is nonetheless attempting to auction the Property through a trustee's sale. Further, MERS has failed to show that any party with an ability to experience an event of default based on the promissory note has authorized MERS to conduct a trustee's sale or transferred to MERS an interest in the promissory note.

(Compl. ¶ 54 (citations omitted).)  Assuming the Schayes actually state a "show me the note" argument here, the Court emphasizes that *Burford* abstention is a matter of discretion, *Garamendi v. Allstate Ins. Co.*, 47 F.3d 350, 354–56 (9th Cir. 1995), and in any event, abstention is exceedingly rare, *Colo. River Water Conservation Dist.*, 424 U.S. at 817.  The Schayes' possible "show me the note" argument does not merit such an

---

[2] *See Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009) (collecting cases regarding "show me the note" theory).

[3] A footnote in the Schayes' motion suggests that such cut-and-paste lawyering began before this case.  The footnote discusses sending paper copies of unpublished authority to Magistrate Judge Aspey.  (Doc. 7 at 7 n.1.)  Magistrate Judge Aspey has never been assigned to this case.

1 extraordinary step. Therefore, the Schayes request to remand based on *Burford* 2 abstention will be denied.

### III. DEFENDANTS' MOTION TO DISMISS

#### A. Legal Standard

##### 1. Rule 8(a)

To state a claim for relief under Fed. R. Civ. P. 8(a), a plaintiff must make "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This "short and plain statement" must also be "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is plausible if it contains sufficient factual matter to permit a reasonable inference that the defendant is liable for the conduct alleged. *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

A proper complaint needs no "formulaic recitation of the elements of a cause of action," *see Twombly*, 550 U.S. at 555, but the plaintiff must at least "allege sufficient facts to state the elements of [the relevant] claim," *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). All of the plaintiff's plausible factual allegations are accepted as true and the pleadings are construed in a light most favorable to the plaintiff. *Knievel*, 393 F.3d at 1072.

##### 2. Rule 9(b)

Under Fed. R. Civ. P. 9(b), "a plaintiff [alleging fraud] must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc). The plaintiff can usually satisfy this requirement by alleging the identity of the person who made the misrepresentation; the time, place, content, and manner of the misrepresentation; the persons who heard, read, or

otherwise received the misrepresentation; and the injury caused by reliance on the misrepresentation.  2 James Wm. Moore, *Moore's Federal Practice* § 9.03[1][b] (3d ed. 2010).

Specifically with regard to allegations of identity, "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). However,

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. . . . [A] plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme.

*Id*. at 764–65 (alterations incorporated; citations and internal quotation marks omitted).

### B.    The Schayes' Fraud Causes of Action (Counts One & Two)

#### 1.    Statutes of Limitations

The statute of limitations for common law fraud is three years. A.R.S. § 12-543(3). The statute of limitations for statutory causes of action, such as statutory consumer fraud, is one year. *Id.* § 12-541(5). Defendants argue that the Schayes missed both of these deadlines because the misrepresentation at issue "appears to concern the interest rate for the Loan" (Doc. 6 at 7), about which the Schayes knew no later than March 2007 when they signed the loan documents that spelled out the interest rate.

Defendants misinterpret the Schayes' Complaint. The misrepresentation the Schayes rely upon for their fraud claims was not the interest rate, but rather CitiMortgage's substitution of a lower income on the Schayes' loan application without the Schayes' knowledge, followed by a misrepresentation that the loan for which they had been approved was the only loan for which they qualified based on their income. While the Court has reservations regarding whether out-of-state homebuyers looking for their second home, especially a home worth almost $1.3 million, would be unsophisticated enough to reasonably rely on a representation that they only qualified for

an interest-only adjustable-rate loan, the Court must accept the allegation as true for purposes of the motion to dismiss.

Accepting the Schayes' claim of deception as true, the Court finds that — at least at this stage — the allegation that the Schayes did not discover CitiMortgage's fraud until November 15, 2010 (when an attorney reviewed their entire loan file) is plausible. Because a cause of action for common law fraud does not accrue "until the discovery by the aggrieved party of the facts constituting the fraud or mistake," A.R.S. § 12-543(3), and because the Schayes filed suit within three years of November 15, 2010, the Court finds that the common law fraud cause of action was timely filed — at least on the face of the complaint. Similarly, because in civil litigation generally, "accrual of a cause of action occurs when the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause," *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 178–79, 181 P.3d 219, 225–26 (Ct. App. 2008), and because the Schayes filed suit within one year of November 15, 2010, the Court finds that the statutory consumer fraud cause of action was timely filed.

Defendants nonetheless assert that tolling is not appropriate because

> "[t]he [fraudulent] concealment sufficient to toll the statute requires a positive act by the defendant taken for the purpose of preventing detection of the cause of action." *Perez v. First American Title Ins. Co.*, CV08-1184-PHX-DGC, 2010 WL 1507012, at *2 (D. Ariz. Apr. 14, 2010) (*citing Cooney v. Phoenix Newspapers, Inc.*, 160 Ariz. 139, 770 P.2d 1185, 1187 (App. 1989)[)]. Here, the Schayes fail to assert any such act let alone one committed by Pennymac.

(Doc. 6 at 9.) Defendants incorrectly interpret the authority they cite. *Perez* and *Cooney* both involved concealment of the means by which the plaintiff could learn about the cause of action. In *Cooney*, for example, a car backing out of a driveway struck the plaintiff as he rode his bicycle. Neither the driver of the car nor the plaintiff could see each other before the accident because of a six-foot hedge on one side of the driveway. The plaintiff did not notice the hedge at the time, and was not physically capable of revisiting the accident site until many months later. He eventually retained an attorney,

and that attorney visited the accident site, but by that time the hedge had been trimmed to two-and-a-half feet.  Not until the attorney deposed the driver did he learn that the hedge had originally been six feet.  At that point, the plaintiff sought to sue the landowner in control of the hedge, against whom the statute of limitations had run.  Plaintiff asked for tolling because the landowner's choice to trim the hedge soon after the accident was allegedly an intentional attempt to conceal the facts that would have informed the plaintiff of his cause of action.  *Cooney*, 160 Ariz. at 139–40, 770 P.2d at 1185–86.

The Schayes need not satisfy the *Cooney* standard here.  A scheme to defraud is by nature an attempt to conceal certain facts from the victim.  At this stage, the Schayes have plausibly alleged their ignorance of the fraud until November 15, 2010, and they have filed suit within the required amount of time.

### 2. Sufficiency of Pleadings

Although the Schayes timely filed their fraud claims, their allegations do not meet the requirements of Fed. R. Civ. P. 9(b) because the Schayes do not identify the role that Pennymac or T.D. Service Company played in CitiMortgage's alleged fraud.  The Complaint contains *no* allegations that connect T.D. Service Company to the alleged fraud, and the closest the Complaint comes to implicating Pennymac in the fraud is the allegation that Pennymac "had knowledge [of the fraud] and is not a bona fide purchaser as the defects are on the face of the loan documents and documents are missing that indicate that concealment has taken place."  (Compl. ¶ 37.)  But this confuses a potential UCC defense to payment with an affirmative cause of action.  Whether or not CitiMortgage's purported fraud excuses the Schayes from paying on the note, Pennymac is not independently liable for fraud simply because it took the note from CitiMortgage.  Accordingly, the Schayes have not satisfied the heightened pleading requirements of Fed. R. Civ. P. 9(b), and the Court will dismiss counts one and two of the Schayes' Complaint.  The Court will nonetheless grant leave to amend, to permit the Schayes another opportunity to plead fraud with specificity, if they can do so within the requirements of Fed. R. Civ. P. 11.

### C. The Schayes' Accounting Cause of Action (Count Three)

The Schayes ask for an "accounting," which they interpret as a requirement for Pennymac and MERS to turn over all information related to the loan. Actions for an accounting are usually reserved for situations in which one party entrusts property to another in a fiduciary relationship. *Dooley v. O'Brien*, 226 Ariz. 149, ¶ 21, 244 P.3d 586, 591–92 (Ct. App. 2010). Absent a special agreement, a debtor-creditor relationship in Arizona is not a fiduciary relationship. *See McAlister v. Citibank*, 171 Ariz. 207, 212, 829 P.2d 1253, 1258 (Ct. App. 1992) (bank owed no fiduciary duty to borrower); *cf. Stewart v. Phoenix Nat'l Bank*, 49 Ariz. 34, 44, 64 P.2d 101, 106 (1937) (special relationship between debtor and creditor existed only because bank officers and directors had been debtor's financial advisors for 23 years). "There is no statutory requirement that the [homeowner/borrower] be supplied with a complete accounting," *Kelly v. NationsBanc Mortg. Corp.*, 199 Ariz. 284, 286–87, 17 P.3d 790, 792–93 (Ct. App. 2000), nor is there any Arizona authority otherwise establishing anything like a right to an accounting in these circumstances. Therefore, it is not clear that the Schayes are entitled to an accounting.

However, the Schayes allege that they

> are informed and believe that their note may have already been paid by a third party either through a government program or through private mortgage or other counter party insurance. As a result, such information is necessary to determine if the security deed of trust was a valid lien against the Property and whether or not there was [*sic*] a valid trustee's sale . . . .

(Compl. ¶ 48.) If some third party has, in fact, already paid off the Schayes' loan, the Schayes would have a valid defense to foreclosure, and such a defense is appropriate to assert in an action (such as this one) intended to halt the foreclosure. Unfortunately, the Schayes' allegation is not "plausible on its face" and therefore fails the requirements of Fed. R. Civ. P. 8(a). In this Court's judicial experience, and according to common sense, *see Iqbal*, 129 S. Ct. at 1950, third parties, governments, and insurers rarely pay off a private borrower's mortgage debt, especially debt in the neighborhood of $1.3 million.

Out of caution, the Court will allow the Schayes an opportunity to amend this allegation. If they take that opportunity, they must explain in detail how they were informed, or why they believe, that another party may have already paid off their debt.

### D.     The Schayes' Quiet Title Cause of Action (Count Four)

The Schayes' quiet title action is another unfortunate instance of distressed borrowers asking this Court to wipe away their debt and award them a free house. This Court has no power to do so. If the Schayes want to quiet title in their home, they must pay off the loan they used to buy the home. *Eason v. IndyMac Bank, FSB*, CV09-1423-PHX-JAT, 2010 WL 1962309, at *2 (D. Ariz. May 14, 2010). Their Complaint contains no allegation that they are prepared to pay off the loan. The Court will therefore dismiss the quiet title cause of action. The Schayes may amend, but if they do so, they must allege in good faith that they are ready and able to tender the unpaid balance of their loan.

### E.     The Temporary Restraining Order

The Schayes' complaint, in its current form, does not state a claim. Accordingly, it is an insufficient basis for a temporary restraining order. That order will therefore be dissolved.

IT IS THEREFORE ORDERED that "Plaintiffs' Motion to Remand" (Doc. 7) is DENIED, "Defendant Pennymac Loan Services, LLC's Motion to Dismiss Complaint" (Doc. 6) is GRANTED, and Defendant T.D. Service Company of Arizona is DISMISSED.

IT IS FURTHER ORDERED that the Schayes have until June 3, 2011, to file an amended complaint, if they so choose, that corrects the defects described in this order.

IT IS FURTHER ORDERED that the temporary restraining order issued by the Maricopa County Superior Court on November 16, 2010, is DISSOLVED.

Dated this 11th day of May, 2011.

_____
Neil V. Wake
United States District Judge