WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Schayes and Wendy Schayes, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>Orion Financial Group, Inc.; CitiMortage, Inc.; Lender Processing Services, Inc.; Mortgage Electronic Registration Systems, Inc.; PNMAC Mortgage Co., LLC; and Pennymac Loan Services, LLC,<br><br>Defendants. | No. CV-10-02658-PHX-NVW<br><br>**ORDER** |

Before the Court is "Defendants Pennymac Loan Services, LLC, PNMAC Mortgage Co., LLC and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss Complaint for Damages, Injunction, Delcaratory [*sic*] & Other Equitable Relief" (Doc. 21). This motion responds to Plaintiffs' amended complaint (Doc. 20), which Plaintiffs filed with the Court's leave after the Court dismissed Plaintiffs' previous complaint for failure to state a claim.

The present motion was filed on June 20, 2011. This District's local rules required Plaintiffs to respond by July 7, 2011. LRCiv 7.2(c); Fed. R. Civ. P. 6(d). On July 5, 2011, Plaintiffs filed for an extension until July 15, 2011. The Court granted this request on July 6, 2011. Plaintiffs filed no response on July 15, nor have they filed anything

1 since. On this basis alone, the Court could grant Defendants' motion. LRCiv 7.2(i).
2 However, as explained below, the Court will grant Defendants' motion on its merits.

**I. BACKGROUND**

The Court draws the following facts from Plaintiffs' amended complaint. The Court will assume the truth of Plaintiffs' plausibly alleged facts, as it must for purposes of the pending motion to dismiss. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Sometime before March 22, 2007, Plaintiffs Daniel and Wendy Schayes decided to buy a home in Arizona with financing of $1,295,000 provided by Defendant CitiMortgage, Inc. The Schayes filled out a loan application in which they accurately provided their then-current income, as well as supporting documentation in the form of tax returns for the previous two years. However, unknown to the Schayes, CitiMortgage's local agent disregarded that income, replaced it with a lower figure, and then forwarded the application to the CitiMortgage underwriting department. This fictitious lower income figure prompted the underwriting department to treat the Schayes as riskier borrowers and therefore require them to pay a higher interest rate. Further, the underwriting department approved the Schayes for an adjustable-rate loan with a period of interest-only payments, rather than a fixed-rate loan. Before the loan closed, CitiMortgage told the Schayes that the loan product for which they had been approved was the only loan product for which they qualified, when in reality, their actual income would have qualified them for a better loan.

The Schayes and CitiMortgage closed this loan transaction on March 22, 2007. Daniel Schayes (but not his wife) executed a promissory note in favor of CitiMortgage, and also a deed of trust securing that note. The loan documentation included a second home rider, suggesting that this Arizona home was not the Schayes' primary residence. Various loan documents give a Florida residential address as the Schayes' mailing address.

The Schayes allege that their original loan documents were scanned and then destroyed to facilitate transferring and securitizing the Schayes' loan through Defendant

Mortgage Electronic Registration System, commonly known as MERS. MERS was named as a nominal beneficiary under the deed of trust, on behalf of CitiMortgage. Apparently through MERS, CitiMortgage eventually assigned the note and deed of trust to Defendant Pennymac Loan Servicing, or perhaps its parent company, Defendant PNMAC Mortgage Co. The Schayes claimed this happened on June 30, 2010, through an assignment document fabricated by Defendant Orion Financial Group. The Schayes believe this document is fabricated for two reasons. First, news reports show that CitiMortgage has settled cases recently where it was accused of filing documents fabricated by Orion. Second, the assignment document states that note and deed of trust were "executed by Daniel L Schayes and Wendy L Schayes, husband and wife, tenants in the entirety." (Doc. 20-1 at 34 (boldface removed; capitalization normalized).) This information is incorrect. Only Daniel Schayes executed the note and deed of trust, and "tenants in the entirety" is inapplicable given that the home became community property. However, the deed of trust itself lists the "borrower" as "Daniel L Schayes & Wendy L. Schayes Tenants in Entirety." (Doc. 20-1 at 5.)

At some unspecified point, the Schayes fell behind on their house payments, allegedly because they could not afford the adjustable-rate payments. On August 13, 2010, T.D. Service Company of Arizona, designated by MERS as a successor trustee under the deed of trust, noticed a trustee's sale to take place on November 17, 2010. The Schayes believe that Defendant Loan Processing Services (LPS) asked T.D. Service Company to notice the trustee's sale. The Schayes claim that LPS is a middleman of sorts, coordinating foreclosures on behalf of lenders through a network of private attorneys that usually communicate only with LPS, not the foreclosing lender. Tiffany & Bosco, counsel for Defendants MERS, Pennymac, and PNMAC Mortgage, is allegedly part of LPS's network. The Schayes accuse LPS of facilitating numerous unauthorized foreclosures.

On November 15, 2010, the Schayes learned for the first time (from a lawyer they hired to review their situation) that CitiMortgage had approved the Schayes' loan based

1  on falsely deflated income. On November 16, 2010 (one day before the scheduled trustee's sale), the Schayes filed suit in Maricopa County Superior Court to stop the trustee's sale. The same day the Schayes filed their complaint, they moved for and were granted a temporary restraining order. On December 13, 2010, Pennymac removed to this Court, claiming diversity jurisdiction. This Court upheld that removal, dismissed the Schayes' complaint with leave to amend, and dissolved the temporary restraining order. (Doc. 19.)

The Schayes have now filed an amended complaint asserting six causes of action. First, the Schayes accuse CitiMortgage, Orion, LPS, and PNMAC Mortgage of common law fraud. Second, the Schayes accuse CitiMortgage and PNMAC Mortgage of statutory consumer fraud. Third, the Schayes seek an accounting from CitiMortgage, Orion, LPS, PNMAC Mortgage, and MERS. Fourth, the Schayes seek to quiet title against CitiMortgage, MERS, PNMAC Mortgage, and unknown parties involved in the mortgage-backed security encompassing their mortgage. Fifth, the Schayes accuse CitiMortgage, MERS, Orion, LPS, and Pennymac of violating A.R.S. § 33-420, which prohibits recording a real estate document that is knowingly forged or knowingly contains false statements. Sixth, the Schayes accuse CitiMortgage and PNMAC Mortgage of unjust enrichment. Defendants MERS, Pennymac, and PNMAC Mortgage have moved to dismiss. It appears that Defendants CitiMortgage, Orion, and LPS have not been served yet.

**II. ANALYSIS**

    **A. Legal Standard**

        **1. Rule 8(a)**

To state a claim for relief under Fed. R. Civ. P. 8(a), a plaintiff must make "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This "short and plain statement" must also be "plausible on its face." *Ashcroft*

*v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is plausible if it contains "[f]actual allegations [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and to permit a reasonable inference that the defendant is liable for the conduct alleged, *Iqbal*, 129 S. Ct. at 1949. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950.

A proper complaint needs no "formulaic recitation of the elements of a cause of action," *see Twombly*, 550 U.S. at 555, but the plaintiff must at least "allege sufficient facts to state the elements of [the relevant] claim," *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). All of the plaintiff's plausible factual allegations are accepted as true and the pleadings are construed in a light most favorable to the plaintiff. *Knievel*, 393 F.3d at 1072.

### 2. Rule 9(b)

Under Fed. R. Civ. P. 9(b), "a plaintiff [alleging fraud] must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc). The plaintiff can usually satisfy this requirement by alleging the identity of the person who made the misrepresentation; the time, place, content, and manner of the misrepresentation; the persons who heard, read, or otherwise received the misrepresentation; and the injury caused by reliance on the misrepresentation. 2 James Wm. Moore, *Moore's Federal Practice* § 9.03[1][b] (3d ed. 2010).

Specifically with regard to allegations of identity, "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). However,

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate

> their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. . . . [A] plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme.

*Id.* at 764–65 (alterations incorporated; citations and internal quotation marks omitted).

### B. Counts One and Two (Common Law and Statutory Consumer Fraud)

The Schayes' fraud causes of action are directed almost entirely at CitiMortgage. Their only connection to the Defendants who brought this motion — MERS, Pennymac, and PNMAC Mortgage — is an accusation that PNMAC Mortgage took an assignment of the Schayes' loan knowing that fraud was supposedly involved in the loan, recordation of documents, and so forth.[1] In other words, the Schayes claim that PNMAC Mortgage was not a bona fide purchaser. But this repeats the Schayes' previous mistake, confusing a potential UCC defense to payment with an affirmative cause of action. Whether or not CitiMortgage's purported fraud excuses the Schayes from paying on the note, PNMAC Mortgage is not independently liable for fraud simply because it took the note from CitiMortgage. In addition, just as in the Schayes' original complaint, the amended complaint does not state a cause of action for any sort of fraud with the specificity required by Rule 9(b), at least with respect to MERS, Pennymac, and PNMAC Mortgage. This claim will therefore be dismissed with respect to those three defendants.

---

[1] Count Two accuses PNMAC Mortgage of complicity in CitiMortgage's alleged scheme to sell the Schayes an unduly expensive loan product. (Doc. 20 ¶¶ 106, 108.) The Schayes' previous complaint did not make such allegations, and this Court dismissed it for failing to show how anyone other that CitiMortgage (not then named as a defendant) defrauded them. Accordingly, these new allegations of complicity between CitiMortgage and PNMAC Mortgage are an obvious attempt to avoid dismissal on the same grounds. There are no factual allegations that link PNMAC Mortgage to CitiMortgage until Pennymac took an assignment from CitiMortgage. Thus, accusastions that PNMAC Mortgage participated in CitiMortgage's alleged fraud do not comport with Fed. R. Civ. P. 11 and will not be considered.

## C. Count Three (Accounting)

The Schayes' previous complaint asked for an accounting. The Court stated that Arizona does not appear to provide a right to an accounting against one's lender, but the Court nonetheless noted the Schayes' claim that they were

> informed and believe that their note may have already been paid by a third party either through a government program or through private mortgage or other counter party insurance. As a result, such information is necessary to determine if the security deed of trust was a valid lien against the Property and whether or not there was [*sic*] a valid trustee's sale . . . .

(Doc. 1 at 16, ¶ 48.) Although payoff is a defense to foreclosure, the Court disregarded this allegation as implausible on its face. The Court permitted amendment to give the Schayes an opportunity to "explain in detail how they were informed, or why they believe, that another party may have already paid off their debt." (Doc. 19 at 15.)

The Schayes' amended complaint again asks for an accounting because they

> are informed and believe that their note may have already been paid by a third party either through a government program or through private mortgage, other counter party insurance or Credit Default Swaps. The Plaintiffs have been informed that such payoff of their loan may have been made by Investors, Insurers, Counterparties on credit default swaps, conveyances or constructive trusts arising by operation of law through cross collateralization and over-collateralization within the aggregate asset pools or later within the Special Purpose Vehicle tranches ("tranches"), the United States Treasury Department through the Troubled Assets Relief Program, The United States Federal Reserve, other parties that have traded in mortgage backed securities from the aggregated pools or securitized tranches containing interests in the loans. (See Exhibit 1 Affidavit of William E McCaffrey, attached to complaint)

(Doc. 20 ¶ 121.)

Even if an "accounting" is a proper cause of action here, this allegation again fails to state a claim. First, the Schayes did not attach an "Affidavit of William E McCaffrey" to their amended complaint. Second, the broad sweep of this claim reveals that the Schayes merely speculate that some party may have compensated their lender. Speculation is not enough, *see Twombly*, 550 U.S. at 555, especially naked speculation of

this variety. This claim will therefore be dismissed with respect to MERS, Pennymac, and PNMAC Mortgage.

### D.   Count Four (Quiet Title)

The Court dismissed the Schayes' previous quiet title claim because the Schayes had not alleged their willingness to pay off the outstanding balance of their home loan. *See Eason v. IndyMac Bank, FSB*, CV09-1423-PHX-JAT, 2010 WL 1962309, at *2 (D. Ariz. May 14, 2010) (quiet title not available if loan balance remains outstanding); *Farrell v. West*, 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941). "The Schayes may amend," the Court said, "but if they do so, they must allege in good faith that they are ready and able to tender the unpaid balance of their loan." (Doc. 19 at 15.)

In their amended complaint, the Schayes claim "in good faith" that they

> are ready and able to tender the unpaid balance, "if any", of their validly secured loan. Plaintiffs believe that there is no unpaid balance as the loan has been paid in full and the Deed of Trust a nullity. [¶] If the debt is proven, Plaintiffs have a good faith belief they could tender payment of the outstanding balance of a valid loan.

(Doc. 20 ¶¶ 135–36.) This representation is insufficient to permit a quiet title cause of action. The Schayes here attempt to say the magic words while at the same time insulate themselves from actual obligation. The quiet title claim will therefore be dismissed with respect to MERS, Pennymac, and PNMAC Mortgage.

### E.   Count Five (Violation of A.R.S. § 33-420)

A.R.S. § 33-420 imposes liability for recording false or forged documents in some circumstances, or failing to remove them from public records. The first type of liability arises for persons who knowingly cause a false or forged to be recorded:

> A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the

> actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

A.R.S. § 33-420(A). The second type of liability arises for persons who may not have caused the document to be recorded, but who know of its falsity and fail to remove it after a proper demand:

> A person who is named in a document which purports to create an interest in, or a lien or encumbrance against, real property and who knows that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid shall be liable to the owner or title holder for the sum of not less than one thousand dollars, or for treble actual damages, whichever is greater, and reasonable attorney fees and costs as provided in this section, if he wilfully refuses to release or correct such document of record within twenty days from the date of a written request from the owner or beneficial title holder of the real property.

*Id.* § 33-420(C).

The Schayes argue that both these subsections apply, but they have not alleged that they gave the notice required by subsection C. Therefore, to the extent the Schayes' claims are directed at this second type of liability — failing to withdraw a recorded document after being warned of its falsity — those claims are dismissed.

As for subsection A, the Schayes claim that MERS and non-party T.D. Service Company of Arizona knowingly caused false document to be recorded, namely, two substitution of trustee documents and the two notices of trustee's sales. These documents contain false statements, the Schayes argue, because MERS identified itself as the beneficiary of the deed of trust.

Assuming that MERS made a false statement — which is not clear, given that MERS was the nominee for the beneficiary — there is no liability under the statute because assignments of mortgages and notices of trustee's sales are not "document[s] asserting" a "claim [of] interest in, or a lien or encumbrance against[] real property." A.R.S. § 33-420(A). Although a notice of sale arguably "assert[s]" an "interest" in real property by implication — who would cause a notice of sale to be filed if they or their principal did not claim an interest? — Arizona courts interpret subsection A's "document

assert[ing] an . . . interest" as the same sort of "document which purports to *create* an interest" (emphasis added) described in subsection C. *See Bianco v. Patterson*, 159 Ariz. 472, 474, 768 P.2d 204, 206 (Ct. App. 1989) (discussing the connection between liability under subsections A and C).

Cases applying § 33-420 support this interpretation. The allegedly offending recordation is always some sort of document purporting to create an interest, lien, or encumbrance, such as a lis pendens, mechanics lien, or the deed of trust itself. *See*, *e.g.*, *Pence v. Glacy*, 207 Ariz. 426, 428, 87 P.3d 839, 841 (Ct. App. 2004) (improperly formed deed of trust); *TWE Retirement Fund Trust v. Ream*, 198 Ariz. 268, 273–74, 8 P.3d 1182, 1187–88 (Ct. App. 2000) (lis pendens); *Guarriello v. Sunstate Equip. Corp., Inc.*, 187 Ariz. 596, 597, 931 P.2d 1106, 1107 (Ct. App. 1996) (mechanic's lien); *City of Mesa v. Smith Co. of Ariz., Inc.*, 169 Ariz. 42, 46–47, 816 P.2d 939, 943–44 (Ct. App. 1991) (lis pendens). The Court could locate no authority applying this statute to assignments of mortgages and notices of trustee's sales. Therefore, this claim will be dismissed with respect to MERS, Pennymac, and PNMAC Mortgage.

### F. Count Six (Unjust Enrichment)

The Schayes' unjust enrichment accusations against PNMAC Mortgage amount to a repeat of their accusation that no one has a right to receive payments under the promissory note because it has allegedly been destroyed and/or separated from the deed of trust. This claim is meritless. The Schayes' unjust enrichment claim will therefore be dismissed with respect to MERS, Pennymac, and PNMAC Mortgage.

## III. LEAVE TO AMEND

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), the Schayes do not merit leave to amend against MERS, Pennymac, or PNMAC Mortgage. Leave to amend need not be granted where there exist circumstances "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of

amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, the Schayes requested extra time to file their response, which the Court granted. The Schayes then failed to file a response. This displays bad faith and a dilatory motive. In addition, the Schayes did not correct deficiencies in their previously dismissed complaint. Accordingly, the Schayes will not receive leave to amend against MERS, Pennymac, or PNMAC Mortgage.

IT IS THEREFORE ORDERED that "Defendants Pennymac Loan Services, LLC, PNMAC Mortgage Co., LLC and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss Complaint for Damages, Injunction, Delcaratory [*sic*] & Other Equitable Relief" (Doc. 21) is GRANTED. Defendants Pennymac Loan Services, LLC, PNMAC Mortgage Co., LLC, and Mortgage Electronic Registration Systems, Inc. are DISMISSED with prejudice.

Dated this 27th day of July, 2011.

_____
Neil V. Wake
United States District Judge